## HENRY HODGE *v.* TOWN OF BENNINGTON.

*Declaration.　　Causes of Action.　　Insufficiency of Highway.
Verdict.*

Where the subject matter and causes of action are separate and divisible, and the declaration is single and in one count, the plaintiff cannot duplicate the causes of action, and it would be error, after having given evidence of one, to allow him to attempt to prove another.

If two causes of action should become disclosed by the evidence, the plaintiff should be required to elect for which he will claim a recovery.

In this case the axle was broken, the plaintiff thrown from the carriage, and the horse having thereby become startled, ran along the insufficient road for some twenty rods, plunged into the ditch and was killed. *Held* that this constitutes but one ground of action.

The plaintiff claimed that the road was insufficient both where the horse was killed and the axle was broken, and also claimed a recovery by reason of the insufficiency at either or both said points, they both being in the section of the highway alleged to have been insufficient in the declaration, which contained but one count. *Held* that it was not error for the court to refuse to compel the plaintiff to elect for which injury he would go to the jury.

When the issues in a case are divisible and distinct, as when the want of a stamp or seal and payment are separate issues, and the jury find by their verdict the debt paid, evidence improperly admitted against objection upon the other issue becomes immaterial and is no ground for reversing the judgment.

The jury in this case found that the horse was killed by reason of the insufficiency of the highway where the axle was broken, and evidence of the insufficiency of the road where the horse was killed thereby became immaterial, and, if improperly admitted against objection, would be no ground for reversing the judgment.

It is the duty of towns to build and repair their roads in such manner that they will be reasonably safe from the consequences of such accidents as might justly be expected occasionally to occur on such roads.

The axle was nearly severed by an old crack, and unsafe for use upon the road, but this was unknown to the defendant. The court instructed the jury that it was the duty of the plaintiff to use such care about the safety of the horse, the harness, and sufficiency of the wagon, and the manner of driving, as reasonably prudent men commonly used about their own affairs of like importance under like circumstances, and if the plaintiff failed to use such care about the wagon, axle, or about anything connected with the accident, and the want of such care in any degree contributed to the accident, he cannot recover. *Held* that in this there was no error.

*Kelley* v. *Glover*, 15 Vt., 714, commented upon and approved.

CASE to recover for damage sustained by the plaintiff to his horse, wagon and harness, through the alleged insufficiency of a highway in the town of Bennington. Plea, the general issue. Trial by jury, at the December term, 1870, WHEELER, J., presiding, and verdict for the plaintiff, embracing the entire damage. Exceptions by the defendant.

The highway in question lay between the villages of Bennington and North Bennington, and was a principal thoroughfare of the town, and as much traveled as any in town. It was conceded by the defendant, that the plaintiff had given due notice of the occurrence of the injury, and of his claims for damages therefor.

It appeared that by an unusual and extraordinary freshet in October, 1869, the waters of the Walloomsac river burst its banks and flowed over and along this road, carrying off the earth and soil and washing it out in gullies and pits in places from one to five feet deep, so that the road for a time was wholly impassable; that the road was repaired by first filling in with stones and then covering it with sand and gravel, first making but a single track so that teams could pass, and afterwards adding to it and widening it.

The plaintiff's evidence tended to show that, on the 4th of January, 1870, he had passed over this road from North Bennington to the village of Bennington, and was upon his return in the afternoon, when the accident happened; that he was driving a horse four years old, harnessed in a buggy wagon, with steel side-springs and iron axles, and his housekeeper was riding with him; that the road was rutted to the depth of three or four inches, and that the ruts were rough; that his wheels were running in the rut, and while so traveling, he turned out to the left, going upon a slow trot, in order to avoid the ruts, and that his near fore wheel soon after passing out of the rut cut through the covering of the stones, and dropped down, as the plaintiff thought, three or four inches on to stones; that he then reined the horse to the right to bring him back into the traveled track; that the horse was a quick ambitious horse, and turned back quick, and that in turning the wheel hung in the stones, and the near fore axle broke off, throwing off the wheel, and the plaintiff and his housekeeper were thrown out upon

the ground; that the horse started then to run, and he held the reins as long as he was able, but the horse got away from him and ran rapidly with the wagon (except said wheel) attached to him, following the road for a distance of twenty-one rods; that there was a two horse team with a wagon, ahead, going in the same direction; that as the horse approached the two horse team, he turned to the right to pass it; that the side of the road against the two horse wagon was steep down to the ditch; that the horse ran along beside the two horse wagon, on the steep side of the road; that the wagon hit the two horse wagon and the horse was thrown or fell to the right, outside the traveled path, into the ditch on that side in which there were stones, and was immediately killed thereby, and the wagon further demolished and the harness injured; that there was no snow in the road, but the ground was frozen, though thawed upon the top. The evidence further tended to show, that in turning out of the rut, the wheel passed about two feet outside of the rut, and at the point where the wheel cut in, the sand and gravel was five or six inches deep over the stones. It was not claimed by the plaintiff's counsel on trial that the road where the axle broke was insufficient by reason of the ruts, or the narrowness of the road, but only that it was faulty in its construction by reason of an insufficiency in the material of which it was made and in the covering of the stones.

The plaintiff's evidence further tended to show that he had owned said horse four or five months; that he was of good disposition, kind in harness, and manageable; that the wagon had been repaired the spring before, the axles set over and the wheels new felloed, and was sound to appearance, and his harness new and strong.

The plaintiff then offered to show that said road was insufficient and out of repair between the place where the axle broke and where the horse was killed, and at the point where the horse was killed. To this the defendant objected, but the court admitted the evidence, which tended to prove that between these two points the road was in places too narrow for two teams to pass readily and safely, with ditches two or three feet deep on either side, filled with stones, and that at the point where the horse was killed

the road was but ten feet wide of even surface, and twelve feet by going down a declivity towards the ditches, allowing buggies to pass with care, but not loaded teams with safety, and the ditches were deep and full of stones.

The plaintiff's counsel indicating that they should claim that the road was insufficient at the point where the horse was killed as well as at the point where the axle broke, and that they should claim a recovery by reason of the insufficiency of the road at both points or either, the defendant claimed that under the declaration the court should put the plaintiff to an election, and that he could not go to the jury for both injuries, or for one in case he should fail to sustain his case as to the other. The court declined so to rule.

The defendant's evidence tended to disprove the plaintiff's case, and tended further to prove that at the time the axle broke it was greatly weakened by reason of an old break in it, at the point where it separated, extending from one third to one half across it, according to the testimony of some witnesses, and from two thirds to three fourths across it, according to the testimony of others. On this point the plaintiff's evidence tended to prove that he had no knowledge of any such defect in the axle; that he oiled the axles of the wagon every time he used it, and had on the morning of the accident taken off the wheels and wiped off the axles with a cloth and oiled the axles, and observed no such defect in the axle.

The plaintiff's counsel in their argument to the jury claimed that the road was insufficient at the place where the axle broke, and that through that insufficiency the entire damage followed, as a natural, necessary and direct consequence. They further claimed that the road was insufficient by reason of its narrowness and stones in the ditch at the point where the horse was killed, as also between the two points, and argued that if the road had been wider, the horse would have turned further to the right of the team ahead and passed by without collision or injury, and that the death of the horse was occasioned by such insufficiency.

The defendant made the following points and requested the court to charge the jury accordingly:

1. If the plaintiff's negligence or want of ordinary care contributed in any degree to the injury, he cannot recover.

2. The town was not bound to furnish a road sufficient for the safe passage of a wagon with an axle broken, as the defendant's evidence tends to prove this was, and loaded and driven and the horse managed as the plaintiff's evidence tends to show these were.

3. The jury are not warranted in inferring the insufficiency of the highway from the fact that the axletree (such as the defendant's evidence shows it to have been), was broken, under the circumstances.

4. That if the jury find that the road was sufficient for the safe passage of the plaintiff, under the circumstances, if the axle of his wagon had been sound, or of reasonable strength for safe travel upon a road in reasonably good condition and repair, the plaintiff cannot recover.

5. The subsequent death of the horse by coming in collision with the team ahead, and the breaking of the wagon at that point by the same means, are not such a direct consequence of the insufficiency of the highway at the point where the axle was broken as that the plaintiff can recover therefor by reason of that insufficiency.

6. The condition of the highway at the point where the horse was killed, as to its insufficiency, is unimportant, and should be laid out of the case. The plaintiff cannot recover by reason of that.

7. The jury are not authorized to find that, if the road had been wider, or smoother, or freer from stones at the point where the horse was killed, the horse would not have come into collision with the team, and so have been killed as he was.

8. Are not authorized to find that the death of the horse was caused by *insufficiency* of the road at that point.

The court (except upon the first point), declined to charge as requested, but did charge as stated below.

To the several rulings of the court against the claims and objections of the defendant, and to the refusal of the court to charge as requested, and to the charge as given upon the points made (except the first), the defendant excepted.

With reference to the second request of the defendant, the court charged the jury that it was the duty of the town to keep the road in good and sufficient repair with reference to the amount and kind of travel for which it was used, and for such horses and carriages as are commonly used and as people may be expected to use on that road; not with special reference to unsound vehi-

cles, but with reference to such as might reasonably be expected to be used by persons traveling the road. That it was the duty of the plaintiff to use such care about the safety of the horse, the soundness and sufficiency of the wagon, and the manner of driving, as reasonably prudent men commonly use about their own affairs of like importance, under like circumstances. That if the plaintiff failed to use such care about the wagon-axle, horse, management of horse, or about anything connected with the accident, and the want of such care on his part contributed in any degree to the happening of the accident, he is not entitled to recover.

With reference to the third request of the defendant, the court charged the jury, in determining whether the road was sufficient or insufficient, to take into consideration the material of which the road was made, its smoothness and condition; and also the fact that the accident did happen to the wagon with the axle as it in fact was, and the other circumstances attending the accident as they in fact existed.

With reference to the fourth request, the court charged the jury as has been stated with reference to the second request, and that the plaintiff would not be entitled to recover unless the road was insufficient; and the insufficiency of the road caused the injury to the plaintiff without any fault on his part, as before indicated in these several respects.

With reference to the fifth, sixth, seventh and eighth requests, the court charged that if the plaintiff was entitled to recover for the accident at the time the axle broke, he was entitled to recover such damages as would naturally follow or might reasonably have been expected to follow from such an accident. That if fright of horse, his getting away and flight, and his being thrown and death, would naturally, or might reasonably be expected to have followed from the accident, the plaintiff was entitled to recover for damages done to horse, wagon or harness by these things without reference to sufficiency or insufficiency of the road at the place where the horse was killed.

That if all these things would not naturally and might not be reasonably expected to follow from the accident, the plaintiff was only entitled to recover for such damages as would or might so follow.

That if the road was insufficient at the place where the horse was killed, and that insufficiency occasioned injury to the horse, harness or wagon, the plaintiff was entitled to recover for the damages occasioned by that insufficiency if without his fault, as before explained, although not entitled to recover on account of the accident where the axle broke.

That if he was entitled to recover on account of an insufficiency in the road at the place where the horse was killed, and not where the axle broke, he was only entitled to recover for the damage that followed in consequence of injury where the horse was killed, and not that sustained before.

The court submitted several questions to the jury, in their answers to which the jury specially found that the road was insufficient both where the axle was broken and the horse was killed; and that the horse was killed by reason of the insufficiency at the place where the axle was broken.

*J. B. Meacham*, *A. B. Gardner* and *Daniel Roberts*, for the defendant.

*T. Sibley*, for the plaintiff.

The opinion of the court was delivered by

REDFIELD, J. This is an action on the case to recover damage to horse, wagon and harness, by reason of the insufficiency of a highway in the town of Bennington.

The declaration alleges, in one count, that a *section* of said highway, viz., "from the Hathaway Corners, so called, to James H. Chapin's place, so called," was insufficient and in want of repair, and that "through the mere insufficiency and want of repair" of said section of the highway, plaintiff's horse was killed, his wagon destroyed, and harness injured.

The case disclosed, in proof, that the axle of the plaintiff's wagon broke, and that he was thereby thrown from the wagon, when the horse escaped from his control and ran some twenty rods, overtook another team, diverged into the ditch, and was then thrown and killed. The fact is disclosed that the axle was unsound and unsafe; but the defect was unknown to the plaintiff, and the jury have determined that the plaintiff was without fault, either in the management of his team, or as to the *condition* of the wagon. The jury have also established the fact that the highway was "insufficient and out of repair," both at the point where the axle broke, and where the horse was killed; and both points are in the *section* of the highway alleged in the declaration to have been insufficient.

I. The defendant claims that, there being but one count in the declaration, "the force of that was exhausted in its application to the broken axle," and its necessary consequence; or that the plaintiff should have been required to make an election between the two points, and been confined to one.

When the subject matter and causes of action are separate and divisible, and the declaration is single, and in one count, the plaintiff cannot duplicate the causes of action, and it would be error, after he had given evidence of one, to allow him to attempt to prove another. And if two causes of action should become disclosed by evidence, the plaintiff should be required to elect for which he would go. But there are many cases, where the cause of action is single, and essentially one occurrence, and one transaction, yet made up of parts, and embracing many incidents. An assault and battery is single, and *one* assault, though made up of altercation, menace, blows, flight, pursuit, the use of missiles, the pistol and the knife, in different places and at different times. If it be one transaction, there is no duplicity in making the proper allegations in one count. In this case the plaintiff alleges, in one count, a section of the highway to have been insufficient, and both the point where the axle was broken, and where the horse was killed, were within the *section* alleged to have been insufficient. It is not a *point*, but a *line*, the whole of which is alleged to have been out of repair; and it was the continuous insufficiency of this line, or section of road, that caused the injury, and brought this mischief upon the plaintiff. A traveler may break his harness or carriage in a deep rut in the highway, and the horse thereby become restive, and plunge forward against a rock, and there overturn his carriage, and the driver be dragged against another rock, and his arm broken; hence the horse escapes, and horse and carriage are destroyed. In such case there were three separate and distinct points of the highway that were insufficient, and each has contributed in degree to the injury, yet it is one transaction, and one cause and ground of action.

In this case the axle was broken, the plaintiff thrown from the carriage, the horse thereby became startled, and ran along the alleged insufficient road for some twenty rods, plunged into the

58

ditch and was killed.  Had all this occurred within the space of five rods, and within the period of five minutes, and the five rods of highway were found insufficient, and such insufficiency, for the whole space, contributed to the destruction of the horse and carriage, we discover no duplicity if the pleader should embrace all in one count, as one and single cause of action ; and the principle is the same if the section of insufficient road is extended to twenty rods.

II.    Upon another ground, as we think, the admission of evidence of the insufficiency of the road at the point where the horse was killed is no ground for reversing the judgment.

The jury have found that the horse was killed by reason of the insufficiency of the road where the axle broke ; and hence the insufficiency of the road at the point where the horse was killed became immaterial.  When evidence, against objections, is improperly admitted, it has been held error, though the court instruct the jury to disregard it where there is a general verdict, and it cannot be determined whether the jury were influenced by such evidence or not.  Such was the intimation of WILLIAMS, C. J., in *Allen* v. *Hancock*, 16 Vt., 233, and the case there cited, 15 Johns., 239.  But when the issues in a case are *divisible* and distinct, as when the want of a stamp or seal, and payment, are separate issues, and the jury have found, by their verdict, the debt *paid*, then evidence improperly admitted, against objection, on the other issue, becomes immaterial, and is no ground for reversing the judgment.

III.    The defendant claims that there was error in the charge of the court in reference to the defective condition of the axle, and that the charge does not fairly and fully meet the defendant's requests.

The axle was nearly severed by an old crack, and, clearly, was unsafe for use upon the road ; but this was unknown to the plaintiff.  The court instructed the jury "that it was the duty of the plaintiff to use such care about the safety of the horse, the soundness and sufficiency of the wagon, and the manner of driving, as reasonably prudent men commonly used about their own affairs of like importance under like circumstances ; that if the plaintiff

failed to use such care about the wagon-axle, or about anything connected with the accident, and the want of such care, in any degree, contributed to the accident, he cannot recover." Were these questions under discussion for the first time in this state at this time, very good reasons could be given that a traveler who ventures upon the highway with an unsafe horse, a defective carriage or harness, takes *that* risk upon himself; and if he thereby suffers injury, though innocent, it is his *misfortune*, which he cannot cast upon the town. Such is the well-established rule in Massachusetts. *Murdock* v. *Warwick*, 4 Gray, 178. But there has been a long and unbroken line of decisions in this state, that " if the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the insufficiency of the road, conspiring with some accidental cause, the defendants are liable." *Hunt and wife* v. *Pownal*, 9 Vt., 411; or, as was comprehensively stated, in *Kelsey* v. *Glover*, 15 do., 714, by ROYCE, J.: " It has long been considered and repeatedly adjudged, that a duty does exist which binds the town or corporation to provide reasonable security in reference to such accidents as may be expected to happen."

The court charged in this case that it was the duty of the town to keep the road in good and sufficient repair, with reference to the kind and amount of travel for which it was used, and for such teams and carriages as might reasonably be expected to be used by persons traveling the road," and that " the plaintiff could not recover unless the road was insufficient, and the insufficiency of the road caused the injury to the plaintiff, without any fault on his part," and he was required to use reasonable diligence and care as to the safe condition of his wagon. Accidents occur from an infinite variety of causes, and combine with defective roads to work injury to travelers in various forms. Carriages and harnesses are unsafe from original but latent defects in construction, or from the working of latent causes, which the most careful and vigilant inspection cannot always detect. And travelers have the right to require, as was settled in *Kelsey* v. *Glover*, " that towns shall build and repair their roads in such manner that they will be reasonably safe for the amount and kind of travel which might

fairly be expected on them, and to enable travelers to be reasonably safe from the consequences of such accidents as might be justly expected occasionally to occur on such roads." Such was the charge to the jury in that case, which was fully sustained by the supreme court.

We feel no duty or disposition to discuss the propriety of these decisions. We think it far better that the law on the subject so long established should remain undisturbed, than that it fluctuate to meet new and changing theories, however ingeniously propounded.

The judgment of the county court is affirmed.